**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **TERRY JOYNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAFN:** |
| | ) | |
| **CITY OF ATLANTA,** | ) | |
| | ) | |
| **AND** | ) | |
| | ) | |
| **CHIEF GEORGE TURNER** | ) | |
| **EARNEST FINLEY,** | ) | |
| **VAN HOBBS,** | ) | |
| **In their individual capacity** | ) | |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) | |

**COMPLAINT**

Plaintiff, Terry Joyner ("Mr. Joyner"), files this Complaint against City of Atlanta ("Defendant") to recover all permissible damages under controlling law because Defendant violated Mr. Joyner's rights pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) Joyner is also using 42 U.S.C. § 1983 and all other applicable laws to vindicate his First Amendment rights, which have been violated by Defendants.

## INTRODUCTION

Mr. Joyner is the son of the City of Roswell's former Chief of Police and City Councilman, Terry L. Joyner, who was also director of security for Lockheed. Plaintiff Joyner, a 47 year old white male officer, who has dedicated 24 year of his life serving the public as an Atlanta Police Department ("APD") officer. Unfortunately, once Mr. Joyner complained about race discrimination against him, he has never gotten a promotion—in over 9 years.

Prior to complaining about race discrimination, Lt. Joyner was on a **promotion face track**, moving from investigator to sergeant in two year, and from sergeant to Lieutenant in less than five year—meaning within 6 years he was promoted three times; whereas now he has been stagnate for nearly a decade in retaliation for complaining about race discrimination. Mr. Joyner is a decorated officer receiving multiple commendations—prior to complaining about race discrimination.

Additionally, Defendants made purely race-based decisions that prohibited Joyner from being selected for promotions to the rank of Captain or higher, promotions that Joyner has been more qualified than the persons who received said promotions. Defendants have a pattern and practice of replacing the position of Captain or higher with the same race of the Captain who vacated said position. As a consequence, because Joyner is Caucasian and was up for promotion to the rank

of Captain in his zone, he could not attain that position because the vacating Captain was African American and that meant—due to Defendants' pattern and practice—that the new Captain had to be African-American. This pattern and practice is an affront to our Constitution and hurts all APD officers.

On top of all the above, Joyner has also had to endure retaliation for exercising his First Amendment rights. Joyner reported Turner's impermissible use of a cell phone truck, across state lines, to track down his run away son, and he reported Turner preferential treatment of his other son (who is an APD officer) by ensuring that his son suffered no discipline for threatening to kill his own wife and for violating numerous APD policies and procedures. Joyner also reported Turner's involvement with ticket fixing for the grandson of a well-known politician. For all that, Defendants instituted and continued a baseless investigation of Joyner and stripped Joyner of his flex hours while also recuing Joyner's compensation, among other materially adverse actions.

## JURISDICTION AND VENUE

1.

Jurisdiction is proper under 28 U.S.C. § 1331 and 1343(a)(4), as well as under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq), 42 U.S.C. § 1983. And Venue is proper under 28 U.S.C. § 1391(b) and L.R. 3.1(B)(3) because (1) a substantial part of the events and omissions giving rise to Mr.

Joyner's claims occurred within this District and Division and (2) Defendants reside and transact business in this District and Division.

**ADMINISTRATIVE EXHAUSTION**

2.

Joyner has satisfied all procedural and administrative requirements with respect to filing this lawsuit.

**PARTIES**

3.

At all times relevant to this Complaint Plaintiff Mr. Joyner was a citizen of the United States and a resident of Georgia. Joyner is currently a highly decorated Lieutenant Officer for the Atlanta Police Department. At all times relevant to this Complaint the Joyner had clearly established legal rights under state and federal law and the United States Constitution. Joyner submits himself to the jurisdiction and venue of this Court and is entitled to bring this action under state and federal law for all general, special, compensatory, punitive, and any other permissible damages.

4.

At all times relevant to this Complaint Defendant George Turner was a United States citizen, a Georgia resident, and the sworn Police Chief for the City of Atlanta. At all relevant times to this Complaint Turner was acting under the color

of state and federal laws. At all relevant times, Turner was subject to the laws of the State of Georgia and the Constitution of the United States. At all relevant times, Turner was responsible for knowing and acting in accordance with all policies, procedures, orders, special orders, general orders, guidelines and regulations of the Atlanta Police Department, while upholding his responsibility as Chief of Police for the City of Atlanta.

Turner knew Joyner complained and reported "ticket fixing" because Joyner mentioned Turner in his report to the office of professional standards ("OPS") and Turner read that same report as well as OPS contacting Turner to inform him of the report and accusation that he, Turner, was involved in ticket fixing. Turner, together with Defendant Hobbs, decided and approved a change in Joyner's shift assignment that both Hobbs and Turner knew would result in substantial amount of monetary compensation for Joyner being negated, because Joyner accused Turner and Hobbs of "ticket fixing."

Turner also decided and approved every decision not to promote Joyner to the rank of Captain or higher because Joyner complained about racial discrimination regarding the treatment of white officers such as Joyner. Also, when a position of Captain or higher was open, and being exited by a Africa-American Officer, Turner also decided not to promote Joyner and any other white officer to said position of Captain based on race alone, i.e., Tuner decided that said positon

would only be filled by an African-America officer because said position was being vacated by an African-America officer. Turner routinely discriminated based upon racial and retaliatory motive, exclusively, much like an out of control dictator.

Joyner is using 42 U.S.C. § 1983 and 42 U.S.C § 2000 et seq and other applicable federal law as the vehicle to sue Turner in his individual capacity regarding federal claims. Turner may be served, personally, at his place of employment.

5.

At all times relevant to this Complaint Defendant Van Hobbs was a United States citizen, a Georgia resident, and the sworn Police Officer for the City of Atlanta. At all relevant times to this Complaint Hobbs was acting under the color of state and federal laws. At all relevant times, Hobbs was subject to the laws of the State of Georgia and the Constitution of the United States. At all relevant times, Hobbs was responsible for knowing and acting in accordance with all policies, procedures, orders, special orders, general orders, guidelines and regulations of the Atlanta Police Department.

Hobbs knew Joyner complained and reported "ticket fixing" because Joyner mentioned Hobbs in his report to the officer of professional standards and Hobbs read that same report as well as OPS contacting Hobbs to inform him of the report

and accusation that he, Hobbs, was involved in ticket fixing. Hobbs decided and approved a change in Joyner's shift assignment that Hobbs knew would result in substantial reduction in Joyner's monetary compensation.

Joyner is using 42 U.S.C. § 1983 and 42 U.S.C § 2000 et seq and other applicable federal law as the vehicle to sue Hobbs in his individual capacity regarding federal claims. Hobbs who currently resides in Alabama may be served, personally, at his place of employment.

6.

At all times relevant to this Complaint Defendant Earnest Finley was a United States citizen, a Georgia resident, and the sworn Police Officer for the City of Atlanta. At all relevant times to this Complaint Finley was acting under the color of state and federal laws. At all relevant times, Finley was subject to the laws of the State of Georgia and the Constitution of the United States. At all relevant times, Finley was responsible for knowing and acting in accordance with all policies, procedures, orders, special orders, general orders, guidelines and regulations of the Atlanta Police Department.

Joyner reported racial discrimination to Finley, and from that moment, Finley ensured that Joyner never got promoted. Prior to reporting racial discrimination against Caucasians such as Joyner, Joyner was on a steadfast promotional track. Finely also made decisions regarding promotion of Captain or

higher based exclusively on race and as a result, when a Captain position was vacated by an African-America, Finley made the decision to fill that position only with only an African-American officer, to the exclusion of Joyner and other Caucasian officer-solely because Joyner and other officer are Caucasian.

Finley decided and approved every decision **not** to promote Joyner to the rank of Captain or higher because Joyner complained about racial discrimination.

Joyner is using 42 U.S.C. § 1983 and 42 U.S.C §2000 et seq and other applicable federal laws as the vehicle to sue Finley in his individual capacity regarding federal claims. Finley may be served, personally, at his place of employment.

7.

The City of Atlanta is a municipality organized and existing under the laws of the State of Georgia, County of Fulton, and has been so for a period preceding six months prior to the filing of this case. Also, at the time of the subject event that has given rise to this lawsuit, the City of Atlanta was the public employer of Defendants Hobbs Tuner, and Finley, as well as the public employer of Plaintiff Joyner. The City of Atlanta retaliated against Joyner, evidenced by the fact that as soon as Joyner reported unlawful conduct and relevant internal violations of rules and governing policies, the City of Atlanta knowingly took action against Joyner to

deliberately reduce his monetary compensation, as well as harm his community reputation.

The City of Atlanta has developed, promoted, and condoned a pattern and practice of strictly race based decision with respect to promoting or hiring officers to fill the position of Captain or higher in its City of Atlanta Police Department. The City of Atlanta's pattern and practice is to ensure that the positon of Captain or higher is filled with the same race of the person who vacated said position. Specifically, the City of Atlanta excluded Joyner from a promotion to Captain, on multiple occasions, because Joyner's status as a Caucasian nullified his consideration for said positon due to the fact that said position had to be filled by an African-American because said position was being vacated by an African-American.

The City of Atlanta also willfully denied Joyner multiple promotional opportunities to the rank of Captain or higher because Joyner complained about racial discrimination against Caucasians such as Joyner.

Joyner is using 42 U.S.C § 2000 et seq and other applicable federal law as the vehicle to sue the City of Atlanta in regarding his federal claims. The City of Atlanta may be served by serving its Mayor, personally, at his place of employment.

## STATEMENT OF FACTS

### A. Joyner's Stellar Track Record as an APD Officer

8.

Over his 20 year law enforcement career, Lt. Joyner has received a litany of commendations due to his public service, professionalism and loyalty to citizens of Atlanta and his colleagues at APD.

9.

Over his 20 year law enforcement career, Defendant City of Atlanta (through Chief Turner himself) gave Lt. Joyner the Meritorious Service Award for saving the life of citizen who had just shot a state law enforcement officer.

10.

Over his 20 year law enforcement career, Lt. Joyner has received the Peace Officer of the Year award.

11.

Over his 20 year law enforcement career, Lt. Joyner has received the Police Medal of Valor award.

12.

Over his 20 year law enforcement career, Lt. Joyner has received the Medal of Honor award for pulling five people out of a house fire, a courageous act that caused Joyner to be hospitalized for smoke inhalation.

13.

Over his 20 year law enforcement career, Lt. Joyner has received the Commendation of Excellence Award.

14.

Over his 20 year law enforcement career, Defendant City of Atlanta (through Chief Turner) gave Lt. Joyner the Judge Arthur Kaplan Community Service Award.

15.

Over his 20 year law enforcement career, Lt. Joyner has received the award of Outstanding Assistance to U.S. Secret Service Atlanta Office.

16.

Over his 20 year law enforcement career, Lt. Joyner has received the award of City Council Proclamation.

17.

Lt. Joyner has a “clean” internal affairs file. Simply put, Lt. Joyner’s conduct as a police officer is above reproach, just as his loyalty to APD.

**B. Joyner was on a steady promotional track prior to complaining about racial discrimination**

18.

In 2000, Joyner was promoted to investigator by APD.

19.

In 2002, Joyner was promoted from investigator to Sergeant by APD, with a ranking on his sergeant's exam of 11 out of 91 qualifying candidates for the sergeant position.

20.

In 2007, Joyner was promoted from sergeant to Lieutenant by APD, while being ranked # 8 of out 71 qualifying candidates for the lieutenant position.

**C. Joyner complains to Defendants Finely and City of Atlanta about Racial-discrimination**

21.

Joyner was on a promotional fast track trajectory until 2008; that's when Lt. Joyner fulfilled his lawful duty of reporting what he perceived to be racial discrimination to his superior officer, Major Earnest Finley.

22.

At the time that Joyner reported racial discrimination Defendant Finely, Finley went bezerk by angrily screaming at Joyner.

23.

Within days of reporting racial discrimination to Finley, another Lieutenant working in the same zone as Joyner and Finley told Joyner to watch his back, because Joyner complained about racial discrimination to Finley and therefore Finley would "come after Joyner forever."

24.

The next day after Joyner reported discrimination to Finley, and after becoming angry with Joyner, Finely told Joyner to investigate the situation ***internally***. But instead, Joyner prompted an ***external*** investigation by reporting the situation as required by APD policy to internal affairs. Finley was ***outraged*** and verbally scolded Joyner for not investigating the situation, internally. After Finley verbally scolded Joyner for turning the racial discrimination case over to internal affairs, Joyner left Finley's office and by the time Joyner reached his own office at another precinct: Finely had already officially ***transferred*** Joyner from his day watch commander position over criminal investigation with Saturday and Sunday off, to the night watch patrol division where he has to work weekends.

25.

After receiving a retaliatory schedule change, Joyner reported Finely for violating his constitutional rights, and that led to a meeting with the City Attorney; shortly thereafter, Joyner was allowed to pick his work assignment.

26.

Shortly after Finley exploded on Joyner for reporting racial discrimination, ***Finley was promoted to Deputy Chief of Field Operations***, the second highest position next to actually being Chief of Police, at that time.

**D**. **Defendants retaliate against Joyner by failing to promote him while promoting less qualified officers despite the fact that Joyner was more qualified than many people promoted.**

27.

Finley was Deputy Chief until his retirement in December 2014, and while ***Deputy Chief***, Finley was Joyner's superior officer; that's relevant because during that time, Joyner has never received a promotion, despite the fact that prior to reporting racial discrimination to Finely, Joyner was on a fast track promotional trajectory.

28.

From 2008 through present, and after reporting racial discrimination, at least 13 different opportunities arose in which Joyner qualified to be promoted to Higher

rank, but Defendants failed to promote Joyner while promoting less qualified officers.

29.

Joyner has been black listed by Defendants because he reported racial discrimination to Defendants and thus has never received a promotion since reporting racial discrimination to internal affairs and Finley.

30.

Regarding the fact that in 2007 Joyner was promoted from sergeant to Lieutenant by APD, while being ranked # 8 of out 71 qualifying candidates for the lieutenant position—of the 63 people ranked lower than Joyner, thirteen people have been promoted to a rank of Captain or Major, and Joyner was passed over for those promotions because he reported racial discrimination to both Finely and internal affairs. In fact, ***at the time that the thirteen officers who were ranked lower than Joyner on the Lieutenants exam were promoted to the higher rank of Captain or Major, the majority of those officers were less qualified than Joyner for said promotions in terms of years of experience, commendations/awards, and disciplinary track records***.

31.

Many of the persons who have been promoted to Captain, while Joyner remained a lieutenant, were less qualified than Joyner to be Captain, evidenced by

some of the people promoted to Captain ahead of Joyner having criminal arrests and extensive histories of sustained complaints by APD's office of professional standards division.

32.

Many of the persons who have been promoted to Major, while Joyner remained a lieutenant, were less qualified than Joyner to be Major, evidenced by some of the people promoted to Major ahead of Joyner having criminal arrests and extensive histories of sustained complaints by APD's office of professional standards.

33.

After reporting racial discrimination in 2008, Defendant prohibited Joyner from attending external command training, while knowing that Command training is an essential qualification for promotion beyond the rank of lieutenant, and while knowing that Joyner was qualified more than others to take external command training.

34.

Defendants denied Joyner a promotion to Captain on January 1, 2015, while knowing that he was more qualified than many of the candidates for that particular position, evidenced by the fact that Joyner had more experience; more

commendations; less negative disciplinary track record; and more experience over the areas in which those who were promoted were placed in command.

### E. Defendants refused to promote Joyner in January 2015 because he was white

35.

Defendants have a pattern and practice of making strictly race based decisions by replacing positions of Captain and above with the same race of the superior officer who vacated his/her position of Captain or above. For example, Defendants have a pattern and practice of replacing black Captains by promoting/replacing ***only*** a black officer to that vacated position of Captain.

36.

In January 2015, four lieutenant officers were promoted to the higher rank position of Captain. At that time Joyner was in Field Operations, and one of the four open Captain positions was for the position of Captain over Field Operations in zone 2 where Joyner worked. The problem for Joyner was the fact that the former Captain of Field Operations for Zone 2 was black and thus due to the pattern and practice of Defendants, the next person to fill that position had to be black. Consequently, Defendants placed a black lieutenant officer (Sharonne Steed) in the open Captain position, to the exclusion of Joyner solely because he was white—notably, Joyner was more qualified than the black lieutenant Steed who got the promotion, including the fact that Joyner had six years of service in

that zone as a lieutenant, acting as the watch commander, criminal investigations commander, and special teams commander. On top of that, Joyner had more commendations/awards and more experience as a law enforcement officer than black lieutenant Steed who got the promotion to Captain of Field Operations for Zone 2. Steed is now Joyner's direct command.

**E. Joyner blows the whistle**

37.

Less than one year ago, Joyner blew the whistle on conduct of Defendant Turner about illegal activity that violated APD rules, regulations, and other laws, by stating in a letter that

> "[J]oyner now requests an investigation into the following: Chief of Police, George Turner, abused his authority by using government resources—government cars, paid APD officers, and high tech location-device equipment e.g., the "phone truck"—to ***cross state lines***, for the sole personal reason of locating Chief Tuner's son ***in Alabama***.
>
> As you can imagine, if any other officer's son had some personal issue that took him across state lines, surely ***no*** fleet of APD officers would have been commanded to search for that son—well out of jurisdiction with equipment used to locate murder suspects.

38.

Defendant Turner knew about the letter Joyner wrote to the City attorney prior to Defendant Turner taking actions that negatively affected Joyner's conditions of employment such as payment compensation.

39.

Joyner requested an investigation into Defendants conduct of "ticket fixing," accusing Defendants Hobbs and Turner of eliminating lawfully-issued traffic tickets for a local politician's grandson. The politician's grandson, in fact, never appeared in Court for the traffic tickets or pay a fine, prior to Joyner requesting an investigation into the matter. In fact, the lawfully issued tickets had not even been put into the system as required, prior to Joyner requesting an internal affairs investigation into the matter.

40.

Defendants Hobbs and Turner knew that Joyner requested an investigation into their conduct regarding the ticket fixing mentioned in above paragraph 38, prior to Defendant Turner taking actions that negatively affected Joyner's conditions of employment such as payment compensation.

41.

Defendants Hobbs and Turner knew that Joyner requested an investigation into their conduct regarding the ticket fixing mentioned in above paragraph 38, prior to Defendant Hobbs taking actions that negatively affected Joyner's conditions of employment such as payment compensation.

42.

Defendant Hobbs reduced Joyner's compensation and took away his flex time, while Joyner's peers suffered no reduction in pay or flex time, because Joyner reported ticket fixing and accused Hobbs of ticket fixing.

43.

Defendant Tuner reduced Joyner's compensation and took away his flex time, while Joyner's peers suffered no reduction in pay or flex time because Joyner reported ticket fixing and accused Turner of ticket fixing, and because Joyner reported Turner's unlawful use of a cell phone truck.

44.

Internal Affairs reports directly to Turner.

45.

Turner instigated and continued an internal-affairs investigation of Joyner ***while knowing*** that policies and procedures demonstrated, unequivocally, that Joyner was not guilty of the alleged offense for which Turner had Joyner investigated. In fact, it took Deputy Chief Spillane to issue to issue a determination of internal affairs ***not sustained*** against Joyner, meaning there was no evidence that Joyner committed any wrong doing.

46.

Deputy Spillane determination to not sustain the charges against Joyner came after Turner ordered internal affairs to continue its investigation and sustain charges against Joyner while Turner knew that policies and procedures demonstrated, unequivocally, that Joyner was not guilty of the alleged offense for which Turner had Joyner investigated by internal affairs.

**COUNT I**

**RETALIATION IN VIOLATION OF TITLE VII,**
**42 U.S.C. 2000 et seq**
(*Against All Defendants, Except Hobbs*)

47.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-36, and any other facts this Court deems relevant, as if fully stated herein to support all allegations made in this Count.

48.

Based on the facts and assertions incorporated to support this Count, Defendants retaliated against Plaintiff by denying him a promotion from 2008 through present because Joyner complained about racial discrimination to Defendants Finely. Upon considering Joyner for a promotion to higher rank, on numerous occasions including promotions made in January 2015, Defendants

made the decision to deny Joyner said promotion because Joyner complained about racial discrimination to Defendant Finely.

49.

Because of Defendants' retaliation, Joyner is entitled to all permissible damages under law, including equitable relief.

**COUNT II**

**RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII,**
**42 U.S.C. 2000 et seq**
(*Against All Defendants*, *Except Hobbs*)

50.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-36, and any other facts this Court deems relevant, as if fully stated herein to support all allegations made in this Count.

51.

Since 2008, every time Joyner qualified for a promotion to Captain or higher, he has been denied that promotion based on race. Specifically, In January 2015 Defendants denied Joyner a promotion to Captain of his zone because Defendants were only going to replace the vacating African-American Captain with an African-American officer. In addition to the previous two facts, and ***based on the facts and assertions incorporated to support this Count***, along with the fact that Defendants have maintained a system of discrimination—strictly based on

race—that excludes or prevents Caucasian employees and candidates from having an equal opportunity at jobs they are more qualified for than African-American counterparts, Defendants discriminated against Plaintiff based on his race by denying him the employment privilege of promotions and salary increases that Joyner's similarly situated African-American employees enjoyed.

52.

Because Defendants discriminated upon Joyner because of his race, Joyner is entitled to all Compensatory damages under controlling law.

## COUNT III

### VIOLATION OF THE GEORGIA WHISTLEBLOWER'S ACT

(*Against City of Atlanta*)

53.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 3-7, 37-46, and any other facts this Court deems relevant, as if fully stated herein to support all allegations made in this Count.

54.

Defendant City of Atlanta was, at all times relevant to this action, Joyner's employer and was a public employer as defined by the Georgia Whistleblower's Act.

55.

Joyner was, at all times relevant to this action, a public employee.

56.

Based on the incorporating facts to support this Count, the City of Atlanta took adverse action against Joyner by adversely affecting the compensation, terms, conditions, and privileges of his employment in retaliation for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency.

57.

City of Atlanta violated the Georgia Whistleblower's Act by adopting or enforcing policy or practice preventing a public employee from disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency.

58.

City of Atlanta's actions were willful, wanton and intentionally directed to harm Joyner.

59.

City of Atlanta's actions were reckless and taken in willful disregard of the probable consequences of its actions. As a result of City of Atlanta's conduct, Joyner has suffered loss of wages and benefits, loss of stature with respect to his

position in the community, has suffered damage to his professional reputation and suffered mental and emotional distress. City of Atlanta's actions and failures to act were the proximate cause of the harm suffered by Joyner as alleged herein.

**COUNT IV**

**42 U.S.C. § 1983—VIOLATION OF FIRST AMENDMENT RIGHTS**
**(***Against Defendants Hobbs and Turner*)

60.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 3-7, 37-46, and any other facts this Court deems relevant, as if fully stated herein to support all allegations made in this Count.

61.

**Based on the incorporated fact to support this Count**, Defendants Hobbs and Turner unconstitutionally retaliated against Joyner because Joyner exercised his First Amendment rights. Turner and Hobbs retaliatory conduct occurred within days of Joyner exercising his First amendment rights as described by the facts incorporated to support this Count. As a result, Joyner is entitled to compensable damages permissible under controlling law.

**COUNT V**

**42 U.S.C. § 1983—VIOLATION OF FIRST AMENDMENT RIGHTS BY CONTINUING A RETALIATORY INVESTIGATION**
**(***Against Defendants Hobbs and Turner*)

"In order to prove a retaliatory investigation claim, plaintiff must demonstrate that (1) defendants possessed an impermissible motive to interfere with his First Amendment rights, (2) that defendants' conduct would chill a [similarly situated person] of ordinary firmness from future First Amendment activities, and (3) that the defendants would not have engaged in the conduct in question but for the retaliatory motive. *See Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir.1999); *Hartman v. Moore*, 547 U.S. 250, 126 S.Ct. 1695, 1703, 164 L.Ed.2d 441 (2006).'

[Denney v. Drug Enf't Admin., 508 F. Supp. 2d 815, 828 (E.D. Cal. 2007)]

62.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 3-7, 37-46, and any other facts this Court deems relevant, as if fully stated herein to support all allegations made in this Count.

63.

Joyner reported the fact that Turner has shown preferential treatment to his son who is an APD officer, by ensuring that his son was not disciplined for violations for which other officers would be disciplined, and by ensuring that his

(Turner's) son was not arrested or appropriately disciplined after his son admitted to internal affairs that he, Tuner's son, threatened to kill his own wife.

64.

Based on the incorporated facts to support this Count, and the facts set forth in this Count, Turner instigated and continued an internal-affairs investigation of Joyner ***while knowing*** that policies and procedures demonstrated, unequivocally, that Joyner was not guilty of the alleged offense for which Turner had Joyner investigated. In fact, ultimately the chargers were ***not sustained*** against Joyner, meaning there was no evidence that Joyner committed any wrong doing.

65.

The sole bases for Turner continuing an internal affairs investigation against Joyner was Turner's desire to retaliate against Joyner because Joyner exercised his First Amendment rights by reporting Turner conduct, which violated laws, policies, regulations and rules. Consequently, Joyner is entitled to all compensation under governing law.

## COUNT VI

## PUNITIVE DAMAGES

**Based on the facts alleged in this complaint,** Plaintiff is entitled to punitive under all applicable laws, because Defendants acted with a willful and

conscience indifference to the law that protect Joyner's Constitutional and statutory rights.

## COUNT VII

## ATTORNEY FEES

**Based on the facts alleged in this complaint,** Plaintiff is entitled to attorney fees under all applicable laws.

**WHEREFORE**, Mr. Joyner prays for a trial by jury of twelve and judgment against Defendant as follows:

(a) The process issue and service be had on each Defendant;

(b) That judgment be granted in favor of the Plaintiff against the Defendant, jointly and severally, for the injuries of Plaintiff;

(c) That Plaintiff recover compensatory damages including pain and suffering, lost income and future lost income, and other expenses in an amount to be determined at trial;

(d) Plaintiff be awarded damages for his loss earnings and reduction in his earning capacity from Defendant;

(e) That Plaintiff recover all costs of this litigation;

(f) That a jury trial be had on all issues so triable;

(g) Plaintiff have Judgment against Defendant for punitive damages; and

(h) That Plaintiff receives such other and further relief as the Court deems just and proper.

Respectfully this 1st day of June 2016,

s/Mario Williams
Mario Williams
Georgia Bar No. 235254

**WILLIAMS OINONEN, LLC**
The Historic Grant Building
44 Broad Street, NW
Suite 200
Atlanta, GA 30303
Tel: 404-654-0288
Fax: 404-592-6225
mario@goodgeorgialawyer.com