IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TERRY JOYNER,

   Plaintiff,

v.

CITY OF ATLANTA, CHIEF
GEORGE TURNER, EARNEST
FINLEY, and VAN HOBBS,
In their individual capacity,

   Defendants.

CIVIL ACTION NO.
1:16-CV-1780-TWT-LTW

## MAGISTRATE JUDGE'S NON-FINAL REPORT AND RECOMMENDATION

  Pending before this Court are Defendants City of Atlanta, Chief George Turner, Ernest Finley, and Van Hobbs' ("De fendants") Motion to Dismiss Amended Complaint (Doc. 33).  For the reasons outlined below, the Defendants' Motion to Dismiss should be **GRANTED IN PART AND DENIED IN PART**.

## DEFENDANT'S MOTION TO DISMISS

### I. Procedural Background

  On June 1, 2016, Plaintiff filed his initial Complaint in this case.  (Compl., Doc. 1).  Therein, Plaintiff brought claims for (1) discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), against Defendants the City of Atlanta (the "City"), Chief George Turner ("Turner"),

and Ernest Finley ("Finley"); (2) retaliation in violation of Title VII against the City, Turner, and Finley; (3) violations of the Georgia Whistleblower Act, O.C.G.A. § 45-1-4, against the City; and (4) violations of Plaintiff's First Amendment rights pursuant to 42 U.S.C. § 1983 ("Section 1983") against Defendants Turner and Van Hobbs ("Hobbs").  (Id.).

On July 20, 2016, Defendants filed their initial Motion to Dismiss arguing certain claims should be dismissed and/or failed to state a claim for relief for a number of reasons. (Doc. 7).  Plaintiff filed a response in opposition to Defendants' initial Motion to Dismiss  (Doc. 18), and a Consolidated Motion to Amend Complaint seeking leave of the Court to amend his original Complaint to add more facts to his claims.  (Doc. 20). In Plaintiff's proposed Amended Complaint, Plaintiff asserted the same causes of action and added additional factual allegations in support of his causes of action.  In the proposed Amended Complaint, Plaintiff claims that: (1) the City, Turner, and Finley discriminated against him on the basis of his race when they repeatedly denied him promotions between 2008 and 2015 in violation of Title VII; (2) the City, Turner, and Finley retaliated against him for his complaint of racial discrimination when they repeatedly denied him promotions between 2008 and 2015; (3) the City violated the Georgia Whistleblowers Act when the City reduced his compensation, took away his flextime, and launched an internal investigation against him after he accused Hobbs of fixing a ticket for a local politician's grandson and Turner of misusing City equipment across state lines for a personal purpose; and (4) Turner and Hobbs retaliated against

him for exercising his First Amendment rights after he reported Turner's misuse of City equipment and reported Hobbs and Turner for fixing a ticket for a local politician's grandson, Hobbs and Turner reduced Plaintiff's compensation and took away his flextime, and Turner launched an unjustified internal affairs investigation against him. Plaintiff also included additional factual allegations in his proposed Amended Complaint to support (1) the causal connection between Plaintiff's alleged protected activities under Title VII and the Georgia Whistleblower Act and Defendants' alleged retaliation, and (2) the fact that his alleged speech was public and/or otherwise protected by the First Amendment. (Doc. 20-2).

Because Plaintiff filed an Amended Complaint, this Court recommended that Defendants' original Motion to Dismiss be deemed moot and then reviewed Plaintiff's proposed Amended Complaint to determine whether the amendment should be permitted. (Doc. 29). The Court granted Plaintiff's Consolidated Motion to Amend in part, but determined that the proposed Title VII claims against Defendants Turner and Finley in their individual capacities should not be permitted because Title VII only grants relief against employers and not individual employees. Thus, Plaintiff's sole remaining Title VII claims for discrimination and retaliation were those against the City. Because the Court did not permit the Amendment with respect to the Title VII Claims against Defendant Finley, no claims remain against Defendant Finley and he should be **TERMINATED AS A PARTY**. This Court also denied Plaintiff's Consolidated Motion to Amend Complaint with regard to discrete employment actions that took place

3

more than 180-days prior to the filing of Plaintiff's June 18, 2015 charge of discrimination. (Id.).

After Plaintiff's Amended Complaint was docketed, Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint arguing Plaintiff's claims should be dismissed for failure to state a claim. (Doc. 33). In particular, Defendants contend that (1) Plaintiff's Title VII pattern and practice discrimination claim should be dismissed because such claims may only be asserted by the Government or brought as class claims; (2) Plaintiff's Title VII retaliation claim fails because Plaintiff cannot show a causal connection between his alleged 2008 racial discrimination complaint and his failure to be promoted in 2015; (3) Plaintiff's First Amendment retaliation claims against Turner and Hobbs should be dismissed because Defendants are entitled to qualified immunity; (4) Plaintiff's First Amendment retaliatory investigation claim against Turner fails as a matter of law because such a claim is not recognized in this jurisdiction, and in the alternative, Defendants are entitled to qualified immunity; (5) Plaintiff's Whistleblower Act claim should be dismissed because it is untimely and because Plaintiff fails to show a causal connection between his alleged protected activity and any adverse employment action; and (6) punitive damages are not available against the City under Section 1983 or Title VII. (Id.).

## II.   **FACTUAL BACKGROUND**

Plaintiff Terry Joyner ("Plaintiff"), a Caucasian man, presents the following factual allegations in support of his remaining claims. Plaintiff avers that he has had a

AO 72A
(Rev.8/82)

distinguished, twenty-year law enforcement career with the Atlanta Police Department (APD), marked by awards, recognitions, and a blemish-free record. (Am. Compl. ¶¶ 8-17). Plaintiff also avers that he received the Peace Officer of the Year, the Police Medal of Valor, and the Medal of Honor awards during the course of his career. (Am. Compl. ¶¶ 10-12). Plaintiff asserts that he was on a "steady promotional track" within the APD prior to complaining about discrimination. (Am. Compl.¶¶ 18-20). In 2000, Plaintiff was promoted to investigator, and promoted again in 2002 to Sergeant. (Am. Compl. ¶¶ 18-19). On Plaintiff's Sergeant's exam, he ranked eleven out of ninety-one qualifying candidates for the sergeant position. (Am. Compl. ¶ 19). In 2007, Plaintiff was promoted to Lieutenant, and was ranked as eight out of seventy-one qualifying candidates for the lieutenant position. (Am. Compl. ¶ 20). Plaintiff contends that he remained on this "promotional fast track trajectory" until 2008, when he first complained of racial discrimination within the APD. (Am. Compl. ¶ 21).

Plaintiff alleges he reported the racial discrimination[1] to his superior officer, Major Earnest Finley. (Am. Compl. ¶ 22). After Plaintiff told Finley about the discrimination, Finley went "bezerk" and began to scream at Plaintiff. (Am. Compl. ¶ 22). Plaintiff was later told by a fellow Lieutenant that Finley would "come after [Plaintiff] forever" since he complained about racial discrimination. (Am. Compl. ¶ 23). The day after Plaintiff reported his complaint, Finley told Plaintiff to begin an internal investigation about the

---

[1] Plaintiff simply states he reported racial discrimination to Finley, but did not provide any facts about the racial discrimination he reported.

5

alleged discrimination.  (Am. Compl. ¶ 24).  Instead, Plaintiff prompted an external investigation by reporting the discrimination to internal affairs, as required by APD policy.  (Am. Compl. ¶ 24).  Finley was outraged and "verbally scolded" Plaintiff for failing to keep the investigation internal.  (Am. Compl. ¶ 24).  By the time Plaintiff left Finley's office, he was transferred from his day watch commander position which afforded him weekends off, to a night watch patrol division which required him to work weekends.  (Am. Compl. ¶ 24).  After receiving this schedule change, Plaintiff reported Finley for violating his constitutional rights, which led to a meeting with the City Attorney.  (Am. Compl. ¶ 25).  Shortly thereafter, Plaintiff was allowed to pick his work assignment.  (Am. Compl. ¶ 25).  Finley was subsequently promoted to Deputy Chief of Field Operations, a position in which he remained until 2014.  (Am. Compl. ¶¶ 26-27).

Plaintiff asserts that between the years of 2008 to the present (and while Finley was his superior), Defendants failed to promote him even though more than thirteen positions arose during that time period.  (Am. Compl. ¶ 28).  According to Plaintiff, thirteen of the sixty-three people who were ranked lower than him on the list of qualifying candidates for the Lieutenant position were promoted to the higher rank of Captain or Major although they were less qualified than him.  (Am. Compl. ¶ 30).  Plaintiff alleges many of the people promoted ahead of him had criminal arrests and extensive histories of APD complaints.  (Am. Compl. ¶¶ 31-32).  Plaintiff claims his failure to be promoted within the last eight years is a consequence of him reporting racial discrimination.    (Am. Compl. ¶¶ 33-34).   Plaintiff asserts that after making the

complaint to Finley, Defendant[2] prohibited him from attending an external command training, completion of which is an essential qualification for those seeking promotion beyond the rank of Lieutenant.  (Am. Compl. ¶ 33).

Plaintiff also contends that Defendants have a pattern and practice of making strictly race based decisions by replacing positions of Captain and above with the same race of the superior officer who vacated his/her position.  (Am. Compl. ¶ 35).  For instance, Plaintiff claims that he was denied a promotion on January 1, 2015, because he is white.  (Am. Compl. ¶¶ 35-37).  According to Plaintiff, he was more qualified than Sharonne Steed, the black Lieutenant officer selected for the promotion.  (Am. Comp. ¶ 36).  Plaintiff asserts that he had six years of service as a Lieutenant in the zone the available position covered, including acting as Watch Commander, Criminal Investigations Commander, and Special Teams Commander.  (Am. Compl. ¶ 36).  Plaintiff also asserts that he had more commendations and experience as a law enforcement officer than Steed.  (Am. Compl. ¶ 36).

After Defendants refused to promote Plaintiff for the position which became available in January 2015, he sent a letter to the City Attorney alleging Turner and Hobbs engaged in illegal conduct and violated APD rules, APD regulations, and other laws. (Am. Compl. ¶ 37).  Specifically, Plaintiff alleged that Turner abused his authority by misusing government resources, including using "government cars, paid APD

---

[2] Plaintiff does not state which Defendant prohibited him from attending the training.

officers, and high tech location-device equipment e.g., the 'phone truck'– to cross state lines for the sole personal reason of locating Chief's Turner's son in Alabama." (Am. Compl. ¶ 37).   Plaintiff also requested an investigation into Defendants Turner and Hobbs' conduct of "fixing" lawfully issued tickets for a politician's grandson.   (Am. Compl. ¶ 39).  Plaintiff asserts that the politician's grandson never appeared in court and his tickets had not been entered into the system.  (Am. Compl. ¶ 39).  Plaintiff reported these allegations to Channel 2 News, the FBI, the City Attorney, and the Office of Professional Standards ("OPS") for the Atlanta Police Department.  (Am. Compl. ¶ 39). The FBI contacted Defendants after Plaintiff reported Defendants' conduct.   (Am. Compl. ¶ 47). When Turner and Hobbs learned about the letter, they allegedly – in retaliation – immediately reduced Plaintiff's pay and took away his flextime.  (Am. Compl. ¶¶ 38-45).   Additionally, Plaintiff avers Defendant Turner "instigated and continued" an internal affairs investigation of Plaintiff, although he knew Plaintiff was not guilty of an offense.  (Am. Compl. ¶ 45).  Plaintiff contends the investigation continued until Deputy Chief Spillane issued a "not sustained" internal affairs determination, meaning there was no evidence Plaintiff committed any wrongdoing. (Am. Compl. ¶ 46).

## III.   **LEGAL ANALYSIS**

Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations in Plaintiff's Complaint, there is a dispositive legal issue that precludes relief. Neitzke v. Williams, 490 U.S. 319, 326-27 (1989); Brown v. Crawford Cty., 960 F.2d

1002, 1010 (11th Cir. 1992). In ruling on a 12(b)(6) motion, the court accepts the factual allegations in the complaint as true and construes them in the light most favorable to Plaintiff. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam). Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of the plaintiff's allegations. Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005); see also Iqbal, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

A complaint must be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. See Iqbal, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted).

### A.   **Plaintiff's Discrimination Claim**

Plaintiff claims the City discriminated against him in violation of Title VII when it refused to promote him in January 2015, although he was more qualified than the officer that received the promotion. According to Plaintiff, the City maintains a system

of discrimination–strictly based on race–that excludes or prevents white employees and candidates from having an equal opportunity at jobs for which they qualify.  The City argues Plaintiff's racial discrimination claim under Title VII fails as a matter of law because as an individual, Plaintiff cannot bring "pattern or practice" claims.

Plaintiff responds that he is not attempting to pursue a pattern and practice discrimination claim as an individual claim for relief.  (Pl.'s Br. 1-2).  Rather, Plaintiff asserts he is using Defendants' alleged practice of discrimination as evidence to show that he was individually discriminated against.  (Id.).  This Court has reviewed Plaintiff's Amended Complaint and agrees that Plaintiff has not attempted to assert a "pattern or practice" discrimination claim.  Therefore, Defendants' Motion to Dismiss Plaintiff's pattern and practice claims should be **DEEMED MOOT**.

### B.      <u>Plaintiff's Retaliation Claim under Title VII</u>

Plaintiff contends the City retaliated against him in violation of Title VII when it repeatedly refused to promote him following his report of racial discrimination.  The City argues Plaintiff's retaliation claim under Title VII should be dismissed because Plaintiff cannot show a causal connection between his alleged racial discrimination complaint made in 2008 and his failure to get promoted to Captain in 2015.  The City asserts this seven-year gap precludes a finding of causation between the two events.  In response, Plaintiff avers the City, through its employees, engaged in a series of retaliatory acts that "bridge the gap" between Plaintiff's report of discrimination in 2008 and his failure to be promoted in 2015.  The acts include: Finley going "bezerk" when

Plaintiff first reported racial discrimination to Finley; Finley scolding Plaintiff after Plaintiff initiated an external investigation into the discrimination; Finley changing Plaintiff's schedule after Plaintiff's report; a peer Lieutenant warning Plaintiff that Finley would "come after him forever"; and lastly, his failure to receive a promotion in the last eight years despite the fact that he had formerly been on a promotional track and had accrued numerous commendations.

Title VII prohibits an employer from retaliating against an employee for opposing an unlawful employment practice.  See Porter v. Am. Cast Iron Pipe Co., 427 F. App'x. 734, 36 (11th Cir. 2011).  In the absence of direct evidence, claims of retaliation under Title VII follow the McDonnell Douglas burden shifting framework.  Jackson v. Geo Group, Inc., 312 F. App'x 229, 233 (11th Cir. 2009).  To establish a Title VII claim based on circumstantial evidence, the plaintiff must show: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two events.  To establish the requisite causal connection, the plaintiff must, at a minimum, show that the decisionmaker was aware of his protected conduct, and that the protected activity and the adverse action were not wholly unrelated. McCann v. Tillman, 526 F.3d 1370, 1376 (11th Cir. 2008), cert. denied, 129 S. Ct. 404 (2008).  "The time period between an employee's protected activity and an employer's adverse action often figures prominently in a determination whether the employee's act caused the employer's reaction."  Clark v. S. Broward Hosp. Dist., 601 F. App'x 886, 897 (11th Cir. 2015).  "The cases that accept mere temporal proximity between an

11

employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (citing Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 1997); see, e.g., Richmond v. Oneok, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (finding three month period insufficient as evidence of causality); Hughes v. Derwinski, 967 F.2d 1168, 1174-1175 (7th Cir. 1992) (finding four month period insufficient as evidence of causality)).

However, evidence of a causal connection is not limited to timing and demonstrative proof. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3rd Cir. 2000). "A retaliation plaintiff may thus 'rely upon a broad array of evidence' to 'illustrate a "causal link" for the purposes of establishing retaliation.'" Taylor v. Cardiovascular Specialists, P.C., No. 11-4521-TCB-RGV, 2013 U.S. Dist. LEXIS 186090, at *97-98 (N.D. Ga. Dec. 11, 2013) (quoting Farrell, 206 F.3d at 283-84). Therefore, when temporal proximity is lacking, causation may be inferred from circumstantial evidence gleaned from the record as a whole. Id. at 98; see also Freeman v. Perdue Farms Inc., 496 F. App'x 920, 926 (11th Cir. 2012) ("[T]he plaintiff need not show as close a temporal connection if he offers other evidence showing causation."). A pattern of antagonism following the protected conduct is one type of circumstantial evidence that shows a causal connection. See Bailey v. Commerce Nat'l Servs., 267 F. App'x 167, 170 (3rd Cir. 2008). This pattern can be established by showing "heightened

scrutiny, negative criticism, differential treatment or violation of standard internal protocol and procedures." Taylor, No. 11-4521-TCB-RGV at *98 (quoting Lee v. N.M. State Univ. Bd. Of Regents, 102 F. Supp. 2d 1265, 1277 (D.N.M. 2000)); see also, e.g., Azzaro v. Cty. of Allegheny, 110 F. 3d 968, 974 (3rd. Cir. 1997) (holding that evidence that no one in the recent history of the county had been terminated in the way plaintiff was terminated supported an inference of causal connection between protected activity and termination); Simmons v. Camden Cty. Bd. Of Educ., 757 F.2d 1187, 1189 (11th Cir. 1985) (finding that evidence supported inference of causal connection where employer indicated its displeasure about the protected conduct); Padilla-Owens v. Sandia Nat'l Labs, No. 02-0448 JB/WDS, No. CIV 02-0448 JB/WDS, 2003 WL 24153912, at *12 n.6 (D. N.M. Nov. 25, 2003) (noting that responding to an employment situation in a way different from ordinary policy can support an inference of causal connection).

    In this case, the eight-year gap between Plaintiff's complaint of discrimination in 2008 and the City's failure to promote him in 2015 is too attenuated to establish causation. See Breeden, 532 U.S. at 273 (noting that cases where the court holds temporal proximity between protected conduct and retaliatory acts is enough to establish causation require the two events to be "very close"). Plaintiff, however, alleges others facts tending to make the causal connection plausible. Plaintiff's allegations appear to show the City deviated from its selection procedures to skip over him even though he was a highly ranked candidate who received many commendations. First, Plaintiff alleges thirteen of the sixty-three people who were ranked lower than him on the list of

13

officers qualified to be Lieutenants were promoted to the higher ranks of Captain or Major. Second, Plaintiff alleges some of the officers promoted over him have extensive criminal histories and administrative complaints. Third, Plaintiff had been promoted three times during the first six years of his career, and following his alleged racial discrimination complaint, the promotions stopped. These facts suggest that the City may have deviated from its ordinary promotion policy to purposely exclude Plaintiff.

Additionally, it is reasonable to infer that Finley's alleged unfavorable reactions after Plaintiff made the discrimination complaint and later initiation of an external investigation demonstrate Finley was displeased with Plaintiff's decisions to engage in protected conduct. Lastly, the City's abrupt change in Plaintiff's schedule after Plaintiff made the complaint suggests the City may have responded to a employment situation in a way different from ordinary policy. Based on these allegations, Plaintiff has shown an inference of causation between his 2008 discrimination complaint and his failure to be promoted in 2015. See Stanley v. City of Dalton, 219 F. 3d 1280, 1282 (11th Cir. 2000) (finding that the plaintiff showed an inference of causation despite the four-year gap between his protected activity and termination when he alleged (1) the defendant confronted him about his statement; (2) the defendant transferred the plaintiff and promoted another employee contrary to departmental policy; (3) the defendant ordered an investigation of the plaintiff even after the plaintiff passed a polygraph test; and (4) the defendant asked the plaintiff how it felt to be "put under a microscope"). Consequently, Plaintiff's retaliation claim under Title VII should not be dismissed.

14

### C.    Plaintiff's First Amendment Retaliation Claims

Plaintiff argues Defendants Hobbs and Turner retaliated against him for exercising his First Amendment rights in violation of Section 1983.  Specifically, Plaintiff contends that in 2016, he reported Turner [to the press, the FBI, the City Attorney and the Office of Professional Standards ("OPS") for the police department] for utilizing a high tech location device or "phone truck" to cross state lines and locate Turner's son in Alabama, and Hobbs and Turner for fixing tickets for a local politician's grandson.  After Plaintiff reported Hobbs' and Turner's conduct, they took actions that affected his compensation and took away his flextime.   Additionally, Plaintiff claims Turner launched an unfounded internal affairs investigation against him when there was no evidence that he engaged in any wrongdoing.

Defendants argue Hobbs and Turner are entitled to qualified immunity because they acted within their discretionary authority when they reduced Plaintiff's pay and flextime.  Defendants Hobbs and Turner also argue Plaintiff cannot show they violated a clearly established right when they took away his flextime because taking away flextime is not an adverse employment action.  Defendants further point out that Plaintiff does not describe how his pay was reduced beyond being stripped of his flex hours.  Additionally, Defendants Hobbs and Turner contend that they are entitled to qualified immunity as to Plaintiff's retaliatory investigation claim because the Eleventh Circuit has made it clear that the Supreme Court has never defined retaliatory investigation as a constitutional tort and thus there is no indication that a retaliatory investigation is

sufficiently adverse to violate Plaintiff's clear constitutional rights.

In response, Plaintiff contends Hobbs and Turner are not entitled to qualified immunity because it is clearly established that it is unlawful to retaliate against a law enforcement officer who speaks about a matter of public concern and Hobbs and Turner violated a clearly established right because they should have known that instituting a retaliatory investigation would dissuade a reasonable police officer from reporting unlawful conduct.

### 1.   Qualified Immunity Standard

Section 1983 provides a cause of action for persons whose rights under the federal constitution have been violated under color of state law. 42 U.S.C. § 1983.  The statute confers no substantive rights itself, instead, it provides "a method of vindicating federal rights elsewhere conferred."  Graham v. Connor, 490 U.S. 386, 393-94 (1989). Qualified immunity protects government officials from being sued in their individual capacities when they are performing discretionary functions.  Wilson v. Layne, 526 U.S. 603, 609 (1999).  The purpose of qualified immunity is to allow government officials to carry out their discretionary duties without fear of personal liability or harassing litigation.  Jones v. City of Atlanta, 192 F. App'x 894, 897 (11th Cir. 2006).  Public officials are protected by qualified immunity as long as their behavior does not violate a "clearly established statutory or constitutional right of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To establish a defense of qualified immunity, the defendant must show that he acted within the scope

16

of discretionary authority when performing the challenged conduct. Leslie v. Hancock Cty. Bd. of Ed., 720 F.3d 1338, 1345 (11th Cir. 2013); Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1300 (11th Cir. 2007); Rich v. Dollar, 841 F.2d 1558, 1563 (11th Cir. 1988). If the defendant meets this burden, the burden shifts to the plaintiff to establish that the defendant's conduct violated clearly established law. Leslie, 720 F.3d at 1345; Williams, 477 F.3d at 1564. Under this step, the plaintiff must establish that the state of the law when the challenged events occurred was such that the defendant had fair warning that his alleged treatment of the plaintiff was unconstitutional. Williams, 477 F.3d at 1300.

The inquiry of whether a constitutional violation is clearly established is undertaken in light of the specific context of the case and not as a broad general proposition. Leslie, 720 F.3d at 1345. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [public] official that his conduct was unlawful in the situation he confronted." Id. For a federal right to be clearly established, its parameters must be sufficiently clear that a reasonable official would understand that his conduct violates that right. Worley v. City of Lilburn, 408 F. App'x 248, 252 (11th Cir. 2011); Williams, 477 F.3d at 1300.

The plaintiff may show that the right is clearly established in three ways: (1) the plaintiff may identify a materially similar case from relevant precedent; (2) the plaintiff may rely on a broader, clearly established principle that should control the facts of the situation; and (3) the plaintiff may show that the "defendant's conduct lies so obviously

17

at the very core of what the First Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, not withstanding the lack of case law." Bailey v. Wheeler, 843 F.3d 473, 484 (11th Cir. 2016).  In this action, the Court has found no materially similar case from the Supreme Court or the Eleventh Circuit to guide the officers in their understanding of the law.  Likewise, Plaintiff does not present sufficient facts here for the Court to conclude that the removal of flextime or bringing an internal affairs investigation is substantially adverse enough such that it would obviously violate the law for the officers to take such actions.  Thus, the Court focuses on whether a broader, clearly established principle of law should control the facts of the situation.  When a plaintiff proceeds in this path, he must show that case law established the principle of law with "obvious clarity . . . so that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted."  Bailey, 843 F.3d at 484.

Plaintiff in this action therefore has to show that he had a clearly established right not to have his pay reduced, not to have his flextime taken away, and not to be subjected to an internal affairs investigation.  If these actions were not adverse employment actions, Defendants Turner and Hobbs would not have been on notice that when they took these actions that they violated clearly established rights.  See, e.g., Worley, 408 F. App'x at 253 (explaining that police officer could not show that he had a clearly established right not to receive an unfavorable performance evaluation that resulted in a raise or not to be reassigned to work he had previously done because it was not clearly

established at the time police officer committed acts that they constituted adverse employment actions necessary for a free speech retaliation suit); <u>Deprado v. City of Miami</u>, 264 F. App'x 769, 771-72 (11th Cir. 2008); <u>Worley v. City of Lilburn</u>, No. 1:06-CV-2654-CAP-RGV, 2009 WL 10668430, at *20 (N.D. Ga. June 3, 2009) (explaining that even if shift transfer, lower annual performance evaluation, and temporary reassignment were adverse employment actions, it would not be obvious that they violated clearly established rights in light of the deference shown police department employers which have a heightened need for order, loyalty, morale, and harmony).

## 2.   **Flextime and Decreased Pay**

To maintain a First Amendment retaliation claim under Section 1983, Plaintiff must establish first that his speech or act was constitutionally protected; second, that Defendants Hobbs and Turner's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on the speech. <u>See Worley</u>, 408 F. App'x at 251-52 (quoting <u>Bennett v. Hendrix</u>, 423 F.3d 1247, 1250 (11th Cir. 2005)).   "In the employment context, the required adverse action in a retaliation claim is an 'adverse employment action.'" <u>Bennett</u>, 423 F.3d at 1252. "A complained-of action constitutes an adverse employment action in a First Amendment retaliation case if the alleged employment action would likely chill the exercise of constitutionally protected speech." <u>Worley</u>, 408 F. App'x at 252 (citing <u>Akins v. Fulton Cty.</u>, 420 F.3d 1293, 1300 (11th Cir. 2005)).   The complained-of action must also involve an important condition of employment. <u>Id.</u>

"Thus, if an employer's conduct negatively affects an employee's salary, title, position, or job duties, that conduct constitutes an adverse employment action." Akins, 420 F.3d at 1300.  The Eleventh Circuit looks at whether complained-of actions are adverse both singly and in the aggregate.  Id. at 1301-02.  Because the analysis of First Amendment retaliation claims involves intensely fact-specific legal determinations, "a defendant in a First Amendment suit will only rarely be on notice that his actions are unlawful." Maggio v. Sipple, 211 F.3d 1346, 1354 (11th Cir. 2000).

In this case, one of Plaintiff's complained-of actions is a decrease in his pay.  A decrease in compensation is an established adverse employment action.  See Akins, 420 F. 3d at 1300 (Any conduct that "alters the employee's compensation, terms, conditions, or privileges of employment . . . is an adverse employment action.").  Although Plaintiff does not explain in what manner and to what degree his pay was reduced, at this stage Plaintiff is not required to plead with particularity.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (holding that factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).").  Therefore, as decreasing an employees pay is a clearly established adverse employment actions, Defendants Hobbs and Turner were on notice that they were violating a clearly established right and accordingly, the qualified immunity defense is unavailable for this claim.  See e.g., Tatroe v. Cobb Cty., No. 1:04-CV-1074-WSD, 2006 WL 559437, at *7 (N.D. Ga. Mar. 7, 2006), aff'd sub nom. Tatroe v. Wheeler, 221 F. App'x 899 (11th Cir.

AO 72A
(Rev.8/82)

2007) (where the plaintiff claimed her pay was decreased in retaliation for her exercising her first amendment rights, the court found that the decrease in pay was an adverse employment action).

Conversely, Plaintiff is not able to show that his decrease in flextime is a violation of a clearly established right.  Plaintiff makes the generalization that at the time he exercised his rights under the First Amendment, Defendants knew it was clearly established that it was unlawful to retaliate against him for exercising his rights. However, the Eleventh Circuit has rejected this type of generalized retaliation argument. See Stanley v. City of Dalton, 219 F. 3d 1280, 1294 (11th Cir. 2000) ("The question is not whether a reasonable police chief would know the general principle that it violates the law to terminate a public employee in retaliation for protected speech.  Instead, here, as in all qualified immunity cases, the issue is fact specific: in 1997, would a reasonable police chief have known that terminating a subordinate officer in this particular factual context violated clearly established law.").  Therefore, this Court must assess whether under the circumstances of this case, Plaintiff has shown that it was clearly established that it was unlawful to decrease his flextime as retaliation for engaging in First Amendment activity.

This Court finds that Plaintiff has not made such a showing.  Plaintiff's Amended Complaint is devoid of facts to suggest that his decrease in flextime altered his compensation, terms, conditions, privileges of employment or otherwise cause him any harm.  Indeed, in his Response, Plaintiff does not respond to Defendants Hobbs and

21

Turner's argument that his decrease in flextime did not constitute an adverse employment action.  Moreover, a reasonable police officer would have doubt as to whether Plaintiff had a right to maintain his flextime as courts within the Eleventh Circuit have concluded that denial of flextime was not an adverse employment action. Harbuck v. Teets, 152 F. App'x 846, 847-48 (11th Cir. 2005) (finding that it was not an adverse employment action for purposes of retaliation claim to allow another employee flextime but not plaintiff); cf. Brown v. McHugh, No. 1:09-CV-0214-RLV-SSC, 2011 WL 13168836, at *13 (N.D. Ga. Aug. 31, 2011) (denial of request for flextime does not constitute adverse employment action for purposes of discrimination claim); Fitzhugh v. Topetzes, No. 1:04-CV-3258-RWS, 2006 WL 2557921, at *6 (N.D. Ga. Sept. 1, 2006) (listing cases in which being denied flextime did not amount to adverse employment action); see also Searcy v. Locke, No. 1:09cv1142, 2010 WL 3522967, at *8 (E.D. Va. Sept. 7, 2010).  At the motion to dismiss stage, a complaint must allege the violation of a clearly established right to defeat a qualified immunity defense.  Jay v. Hendershott, 579 F. App'x 948, 950 (11th Cir. 2014).  Plaintiff has not done so here and therefore, Defendants Hobbs and Turner are entitled to qualified immunity on Plaintiff's retaliation claim based on the decrease in flextime.

### 3.   Internal Affairs Investigation

This Court also concludes that Turner can avail himself of the qualified immunity defense with respect to launching and continuing the internal affairs investigation against Plaintiff.  Here, Plaintiff cannot establish that his right to not be subjected to what he

22

characterized as an unjustified investigation was clearly established.  First, Plaintiff has not presented and the Court has not located any case law supporting the notion that being subjected to such an investigation was materially adverse or would be enough to dissuade an employee from exercising his First Amendment rights.

Second, this Court cannot conclude that launching the investigation was materially adverse.  While Plaintiff urges in his brief that subjecting a police officer to a baseless investigation is sufficient to amount to an adverse employment action because it would chill an officer of ordinary firmness from continuing to engage in protected speech, Plaintiff does not allege any facts showing how the investigation was harmful to him. Plaintiff asserts in his brief, but not in his Complaint, that Turner "sought to ruin [his] clean disciplinary record and . . . take further steps to justify not promoting him to a higher rank," Plaintiff admits that he was exonerated during the investigation. (Pl.'s Br. 23).  Plaintiff states the investigation's ultimate finding was "not sustained," meaning "there was no evidence that [he] committed any wrong doing."  (Am. Compl. ¶¶ 45-46). Plaintiff does not present any factual allegations in his Amended Complaint supporting the notion that material aspects of his employment would still be harmed even though the investigated exonerated him.

Furthermore, even if the Court were inclined to find that conducting the investigation could be an adverse employment action, it is not a foregone conclusion that it is clearly established that it was an adverse employment action.  Indeed, cases within this circuit have concluded where there is no showing that the investigation led to some

additional harm, such as the employee's termination, such investigations were not sufficiently adverse to amount to an adverse employment action. Entrekin v. City of Panama City, 376 F. App'x 987, 995 (11th Cir. 2010) (concluding that investigation of complaint against police officer did not amount to adverse action because "the complaint ultimately was not sustained" and the plaintiff therefore, suffered no harm from the filing of the complaint); Jenkins v. Tuscaloosa City Bd. of Educ., 72 F. Supp. 3d 1238, 1260 (N.D. Ala. Dec. 9, 2014) (finding that internal investigation into whether employee restrained students was not adverse employment action where it did not result in a significant change in employment status); Davis v. City of Lake City, No. 3:10-CV-1170-J-34TEM, 2013 WL 12091324, at *11 n.18 (M.D. Fla. Mar. 15, 2013) (concluding that launching two internal affairs investigations against employee was not adverse employment action because it did not cause any harm to employee). Under these circumstances, the Court cannot conclude that Turner would have known that his conduct in launching the investigation would violate Plaintiff's clearly established right. Accordingly, the retaliatory investigation claim asserted against Defendant Turner should be **DISMISSED**. The Court also observes that Plaintiff appears to have asserted his retaliatory investigation claim against Defendant Hobbs as well even though he has not alleged any connection between Defendant Hobbs and the investigation. (Am. Compl., p. 28 (See caption providing that the claim is against Defendants Hobbs and Turner)). To the extent that Plaintiff intended to assert the retaliatory investigation claim against Defendant Hobbs as well, the claim against Defendant Hobbs should also be

24

**DISMISSED** because he would also be entitled to qualified immunity for the same reasons.

### D.    Plaintiff's Whistleblower Claims

Plaintiff argues Defendant City of Atlanta violated the Georgia Whistleblower Act when it adopted or enforced a policy or practice of preventing employees from disclosing noncompliance with laws, rules, or regulations to a supervisor or governmental agency. (Am. Comp. ¶ 58).   In support, Plaintiff contends that Hobbs and Turner retaliated against him after he reported Turner's use of the phone truck to locate Turner's son and Hobbs and Turner for fixing tickets for a local politician's grandson to the FBI, the City Attorney, and OPS.   The City argues Plaintiff has not effectively pled a whistleblower claim because Plaintiff has failed to show that his claim is timely and to show causation between his alleged protected activity and an adverse employment action.

### 1.    Timeliness

The Georgia Whistleblower Act (the Act) prohibits public employers from retaliating against a public employee for disclosing a violation of, or noncompliance with, a law, rule, or regulation to either a supervisor or a government agency, unless the disclosure was made with knowledge that the disclosure was false or with reckless disregard for its truth or falsity. O.C.G.A. 45-1-4(d)(2).  The Act defines a law, rule, or regulation to include "any federal, state, or local statute or ordinance or any rule or regulation adopted according to any federal, state, or local statute or ordinance."  Id. Under O.C.G.A  45-1-4(e)(1), a public employee must initiate a whistleblower claim

within one year after discovering the retaliation or within three years after the retaliation, whichever is earlier.  O.C.G.A  45-1-4(e)(1).

The City's argument, that Plaintiff's claim violates the statute of limitations, is an affirmative defense and thus, Plaintiff does not have to plead facts in his Amended Complaint.  See Boyd v. Warden, Holman Corr. Facility, 856 F.3d 853 (11th Cir. 2017) ("[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred.").  Nevertheless, in this case, Plaintiff alleges that he engaged in protected speech "less than one year ago." (Am. Compl. ¶ 37).  Thus, it is not apparent from the face of Plaintiff's Amended Complaint that the claim is time-barred.  Therefore, dismissal on these grounds that Plaintiff's claim violates the statute of limitations is not appropriate.

## 2.   **Causal Connection**

Retaliation claims brought pursuant to the Act are evaluated under the McDonnell Douglas burden-shifting analysis used in Title VII retaliation cases.  Forrester v. Ga. Dep't of Human Servs., 708 S.E.2d 660, 665 (Ga. App. 2011).  To establish a prima facie case of retaliation under the Act, the plaintiff must present evidence that (1) the defendant-employer falls under the Act's definition of public employer; (2) the employee disclosed a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency; (3) the employee was then discharged, suspended, demoted, or suffered some other adverse employment action by the defendant-employer; and (4) there was some causal connection between the disclosure of the violation and the

26

adverse employment action.  Id.  In a whistleblower case, the causation element "is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated."  Albers v. Ga. Bd. of Regents of the Univ. Sys. of Ga., 330 Ga. App. 58, 62-63 (2014) (quoting Freeman v. Smith, 324 Ga. App. 426, 431 (2013)).  A retaliation claim fails "[i]f there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation."  Albers, 330 Ga. App. at 62-63.

Plaintiff has sufficiently plead a causal connection between Plaintiff's disclosure of Hobbs and Turner's alleged misconduct and adverse employment actions taken against him.  Plaintiff alleges he disclosed Hobb and Turner's conduct "immediately before" the City reduced his compensation and privileges.  The word "immediate" implies there was a close temporal proximity between the disclosure and the adverse actions.  See Resnick v. AvMed, Inc., 693 F.3d 1317, 1324 (11th Cir. 2012) ("In a motion to dismiss, we review the pleadings and draw 'reasonable inference[s]' from the facts alleged." (quoting Iqbal, 556 U.S. at 678)).  Moreover, the City has cited no case law to support the proposition that Plaintiff's Complaint has to allege precise dates to sufficiently allege a causal connection.  Indeed, Courts within the Eleventh Circuit have held that at the motion to dismiss stage, "a court cannot simply engage in 'rote evaluation of a time lag' in evaluating the sufficiency of a retaliation claim, but instead must read the 'complaint holistically' and take into account the 'relevant context.'"  El-Saba v. Univ. of S. Ala., No. CV 15-00087-KD-N, 2015 WL 5849747, at *15 (S.D. Ala.

27

Sept. 22, 2015), <u>R&R adopted</u>, 2015 WL 5882977 (S.D. Ala. Oct. 7, 2015) (quoting <u>Garayalde-Rijos v. Municipality of Carolina</u>, 747 F.3d 15, 25 (1st Cir. 2014)); <u>see also</u> <u>Carlson v. CSX Transp., Inc.</u>, 758 F.3d at 829 (7th Cir. 2014) (there is no bright-line timing rule to determine whether a retaliation claim is plausible).  Moreover, temporal proximity is not the only way to establish causation. <u>El-Saba</u>, 2015 WL 5849747, at *15 (temporal proximity is but one factor).  Plaintiff also alleges a "pattern of retaliatory antagonism" to further demonstrate a causal connection between the two events.  <u>Id.</u> Plaintiff has alleged that after he reported Defendants Hobbs and Turner, Defendant Turner initiated an internal affairs investigation of him based on false accusations and both Defendants Hobbs and Turner decreased his pay and privileges.  Therefore, even though Plaintiff has not specified the time gap between his disclosure and the adverse employment actions, the pattern of retaliatory acts he alleges makes the causal connection stronger.  <u>See</u> <u>Thomas v. Cooper Lighting, Inc.</u>, 506 F.3d 1361, 1364 (when temporal proximity between the statutorily protected activity and the adverse employment action is not "very close," the plaintiff must offer some other evidence of causation).  Therefore, Plaintiff should be allowed discovery to further develop his Whistleblower claims. <u>See</u> <u>El-Saba</u>, 2015 WL 5849747, at *15 ("Once a complaint has alleged enough facts that retaliation for protected conduct is plausible, the plaintiff is entitled to proceed to discovery.").  Accordingly, Defendants' Motion should be **DENIED** as to Plaintiff's Whistleblower claims.

28

### D.   <u>Plaintiffs Request for Punitive Damages</u>

In his Complaint, Plaintiff asserts that he is entitled to punitive damages because Defendants City of Atlanta, Hobbs, and Turner acted with willful and conscience indifference to the law that protects Plaintiff's constitutional and statutory rights. Defendants argue Plaintiff cannot collect punitive damages from the City under either Section 1983 or Title VII.  Plaintiff does not respond to this argument.

Municipalities are not liable for punitive damages under either Section 1983 or Title VII.  <u>See</u> <u>Walters v. Atlanta</u>, 803 F.2d 1135, 1148 (11th Cir. 1986); <u>Young v. City of Mobile</u>, No. 13-0586-KD-B, 2014 WL 2739422, at *6 (S.D. Ala. June 17, 2014). Therefore, Plaintiff's claims for punitive damages against the City under Title VII and Section 1983 fail as a matter of law.  Consequently, Plaintiff's request for punitive damages from the City should be **DISMISSED**.

### **CONCLUSION**

For the reasons discussed above, the undersigned **RECOMMENDS** that the Defendant's Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART**. (Doc. 33).

**SO REPORTED AND RECOMMENDED**, this   23   day of February, 2018.


/s/Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)